# United States Court of Appeals for the Federal Circuit

_____

(Cancellation No. 92046702)

**DUOPROSS MEDITECH CORPORATION,**
*Appellant,*

**v.**

**INVIRO MEDICAL DEVICES, LTD.,**
*Appellee.*

_____

2012-1050

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

Decided: August 14, 2012

_____

THOMAS J. MOORE, Bacon & Thomas, PLLC, of Alexandria, Virginia, argued for appellant. With him on the brief was THOMAS LEE.

_____

Before PROST, MOORE, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

The Trademark Trial and Appeal Board dismissed DuoProSS Meditech Corporation's counterclaims for cancellation of two trademark registrations owned by

Inviro Medical Devices, Ltd., after the Board concluded that DuoProSS failed to prove that the marks are merely descriptive when used with the goods recited in Inviro's registrations. *Inviro Med. Devices Ltd. v. DuoProSS Meditech Corp.*, No. 92046702, Dkt. 52 (TTAB Apr. 5, 2011) ("Board op."). We reverse the Board's decision because the Board failed to consider one of the marks as a whole, unduly focusing on only one portion of it; the Board failed to make adequate findings to support its conclusion that DuoProSS failed to prove descriptiveness; and the Board erroneously concluded that puffing could render the marks more than descriptive.

I

DuoProSS and Inviro are competitors who sell medical syringes and needles. Their products are designed to prevent accidental needle sticks. Inviro's products accomplish that objective by capturing a syringe's needle in the syringe barrel after use and sealing off the barrel with the needle inside. To accomplish that result, a person using an Inviro syringe (1) rotates the syringe plunger clockwise; (2) pulls the syringe plunger back, thereby drawing the needle into the syringe barrel; and (3) snaps off the plunger, thereby sealing the needle inside the barrel and making the syringe safe for handling and disposal. The following instructions included with Inviro's products demonstrate how the products work:

**SNAP!**   **Disabling Instructions**

After dose is delivered, WITH PLUNGER FULLY DEPRESSED activate safety mechanism:



1. <u>ROTATE PLUNGER CLOCKWISE ONE HALF TURN</u> to release needle.

2. <u>PULL BACK ON PLUNGER UNTIL IT STOPS</u> <u>observing withdrawal of needle into the barrel.</u>



3. <u>SNAP OFF PLUNGER!</u> permanently disabling syringe.

**Syringe Disposal**

<u>Discard the used Inviro SNAP! Safety Syringe in</u> <u>an appropriate safety disposal container.</u>

Part # PP-0014-00, Rev #B



**SNAP SIMPLY SAFER**

Inviro owns the two trademark registrations at issue in this appeal. The first, U.S. Registration No. 2,944,686, covers the design shown below (the "SNAP! design mark"):

**Snap!**

The SNAP! design mark is registered for use with "medical devices, namely, medical, hypodermic, aspiration and injection syringes" in class 10. The second registration at issue is U.S. Registration No. 3,073,371, for SNAP SIMPLY SAFER in standard characters (the "SNAP SIMPLY SAFER mark"), for use with "medical devices,

namely, cannulae; medical, hypodermic, aspiration and injection needles; medical, hypodermic, aspiration and injection syringes" in class 10.

This case commenced when Inviro petitioned to cancel a trademark registration owned by DuoProSS for the design mark BAKSNAP, for use with a "safety syringe for medical use" in class 10. DuoProSS asserted counterclaims for cancellation of a number of Inviro's registrations, including the SNAP! design mark and SNAP SIMPLY SAFER mark at issue in this appeal. Inviro withdrew its petition to cancel DuoProSS's BAKSNAP design mark. DuoProSS, however, maintained its counterclaims against Inviro. In addition to the SNAP! design mark and the SNAP SIMPLY SAFER mark, Dupross petitioned to cancel the following of Inviro's registrations:

> U.S. Registration No. 2,970,944, for the mark SNAP in typed format, for use with "medical devices, namely, cannulae; medical, hypodermic, aspiration and injection needles" in class 10;

> U.S. Registration No. 2,778,604, for the mark SNAP in typed format, for use with "medical devices, namely, medical, hypodermic, aspiration and injection syringes" in class 10; and

> U.S. Registration No. 2,967,982, for the mark SNAP in typed format, for use with "medical devices, namely, medical, hypodermic, aspiration and injection syringes" in class 10.

The Board sustained DuoProSS's counterclaims as to the three SNAP marks in typed format. First, the Board noted that the '982 registration is a duplicate of the '604

registration, and that Inviro agreed to voluntarily surrender the '982 registration. The Board ordered cancellation of the '982 registration on that ground.

With respect to the remaining SNAP marks in typed format—the '604 and '944 registrations—the Board considered whether the term SNAP is merely descriptive when used with the goods recited in those registrations. The Board initially determined that the term is merely descriptive because it "describes a significant feature or function of [Inviro's] cannulae, syringes and needles, namely that to safely disable them, one must snap off the plunger." Board op. at 23. The Board then considered Inviro's argument that the term SNAP is a double entendre and refers not only to the snapping of a syringe plunger, but also to the products' ease of use: that the products are a "snap to use." *Id.* The Board found insufficient evidence to demonstrate that, "upon seeing the mark SNAP itself, [purchasers of Inviro's products would] readily understand this connotation." *Id.* at 26. The Board further found Inviro's evidence of acquired distinctiveness insufficient. *Id.* at 26-27. For these reasons, the Board concluded that the '604 and '944 registrations for the SNAP mark in typed format were merely descriptive and ordered cancellation of those registrations.[1] *Id.* at 28.

The Board, however, declined to cancel the SNAP! design mark and the SNAP SIMPLY SAFER word mark. *Id.* at 28-30. While both of those marks contained the literal element SNAP, which the Board acknowledged was merely descriptive, the Board found that the broken exclamation point in the SNAP! design mark and the words SIMPLY SAFER in the SNAP SIMPLY SAFER mark rendered those marks more than descriptive. *Id.* at 28-31.

---

[1]    Inviro has not appealed these determinations.

DuoProSS appeals the Board's ruling with respect to the latter two marks. We address each in turn.

II

Substantial evidence fails to support the Board's finding that DuoProSS failed to meet its burden to prove that the SNAP! design mark is merely descriptive. The evidence in the record supports no conclusion other than that the mark is merely descriptive.

A mark may not be registered on the principal register if, "when used on or in connection with the goods of the applicant," the mark is "merely descriptive . . . of them." 15 U.S.C. § 1052(e)(1). A mark is merely descriptive if it "'consists merely of words descriptive of the qualities, ingredients or characteristics of' the goods or services related to the mark." *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1173 (Fed. Cir. 2004) (quoting *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 543 (1920)). One articulation of that rule, of particular significance to the SNAP marks here, is that a mark is merely descriptive if it "conveys information regarding a function, or purpose, or use of the goods." *In re Abcor Dev. Corp.*, 588 F.2d 811, 813 (CCPA 1978) (citations omitted). The line between a mark that is merely descriptive and may not be registered absent secondary meaning, and one that is suggestive and may be registered, is that a suggestive mark "requires imagination, thought and perception to reach a conclusion as to the nature of the goods," while a merely descriptive mark "forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Id.* at 814 (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976)).

The determination of whether a mark is merely descriptive is a question of fact. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001)

("Placement of a term on the fanciful-suggestive-descriptive-generic continuum is a question of fact.") As the party challenging the registrations' validity, Duo-ProSS bears the burden of proving that the mark is merely descriptive by a preponderance of the evidence. *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1356 (Fed. Cir. 2009). The Board concluded that DuoProSS failed to meet its burden.

We review the Board's factual findings supporting its conclusion for substantial evidence. *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003) (citations omitted). The substantial evidence standard demands deference to the Board. Substantial evidence is defined simply as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). Thus, we may not reverse the Board's decision for lack of substantial evidence—even if we would have viewed the facts differently if sitting as the tribunal of original jurisdiction—so long as competent evidence in the record supports the Board's ruling. "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007).

Even under this deferential standard of review, we conclude that the Board erred when it found that Duo-ProSS failed to prove that the SNAP! design mark is merely descriptive. This is so for two reasons. First, the Board improperly focused on only one portion of the mark when it considered the mark's commercial impression. Second, the Board failed to make any findings to support its conclusion that DuoProSS failed to prove that the

mark is merely descriptive. The findings that the Board did make, in fact, support the contrary conclusion.

A

The Board improperly separated the SNAP! design mark ( Snap! ) into the literal element SNAP and the broken exclamation point. When determining whether a mark is merely descriptive, the Board must consider the commercial impression of a mark as a whole. *Dial-A-Mattress*, 240 F.3d at 1345-46. Because a mark must be considered as a whole, the Board may not "dissect" the mark into isolated elements. *Id.* (citing *Beckwith*, 252 U.S. at 545-46). *See also Oppedahl & Larson*, 373 F.3d at 1174-75. That is what the Board did in this case, however.

The Board began by noting that the mark includes the "literal element SNAP," an element that the Board had already determined was merely descriptive. Board op. at 28. The Board then put the SNAP element aside and analyzed the exclamation point in isolation. *Id.* at 29. The Board found that the exclamation point was not merely descriptive, characterizing it as "fanciful." *Id.* While the Board acknowledged that the exclamation point depicts breaking, it observed that the design "only suggests the breaking of something," not necessarily the breaking of a syringe. *Id.* The Board, in other words, believed that the exclamation point requires a consumer to employ "imagination, thought and perception" to determine that the function of the recited goods included the breaking of a syringe plunger. *Abcor*, 588 F.2d at 814.

At this point, the Board should have considered whether the entire mark, composed of the exclamation point and the descriptive word SNAP, conveys a commercial impression that is merely descriptive to a consumer. *Dial-A-Mattress*, 240 F.3d at 1345-46; *Oppedahl & Lar-*

*son*, 373 F.3d at 1174. The Board failed to do so. Rather, after considering the exclamation point in isolation, the Board summarily concluded that "the mark, as a whole, is not a merely descriptive illustration of an important feature or characteristic of applicant's cannulae, syringes and needles." Board op. at 29. The Board's opinion lacks any indicia, however, that it actually considered the mark as a whole. The Board failed to explain why a mark composed of the admittedly descriptive word SNAP, which refers to a prominent function of the recited goods, and an exclamation point that depicts at least the breaking or snapping of "something" is not, when taken as a whole, merely descriptive of the snapping syringes.

When DuoProSS moved for reconsideration on this issue, the Board, appearing to recognize that it had erroneously dissected the mark, attempted to compensate for its error by noting that, "[a]lthough the word 'SNAP' is descriptive, it is physically connected to the non-descriptive design." *Inviro Med. Devices Ltd. v. DuoProSS Meditech Corp.*, No. 92046702, Dkt. 55 at 4 (TTAB July 22, 2011). That additional analysis, however, was insufficient to cure the Board's error. In fact, it was circular, allowing the Board to remove the exclamation point from the context in which it was used so as to justify a description of it as fanciful, and then use that conclusion to bootstrap the clearly descriptive word SNAP back into the mark. The Board, to be sure, may ascertain the meaning and weight of each of the components that makes up the mark. *Oppedahl & Larson*, 373 F.3d at 1174. The Board, however, ultimately must consider the mark as a whole and do so in the context of the goods or services at issue. *Abcor*, 588 F.2d at 813-14. The Board failed to do so here.

B

In addition to dissecting the mark, the Board failed to cite any evidence supporting its conclusion that a mark incorporating the exclamation point required a consumer to employ "imagination, thought and perception" to determine the nature of the goods with which the mark is used. *Abcor*, 588 F.2d at 814. The findings that the Board did make, in fact, contradict that view. The record, therefore, is insufficient to support the Board's conclusion, even under the substantial evidence standard of review.

The Board found it significant that the exclamation point "only suggests the breaking of something," rather than a syringe plunger specifically. Board op. at 29. The Board, however, cited no evidence in the record supporting the conclusion that a consumer would have to employ imagination, thought, and perception to determine that the mark was referring to the snapping of a syringe plunger. The commercial impression that a mark conveys must be viewed through the eyes of a consumer. *Dial-A-Mattress*, 240 F.3d at 1345 (noting that competent evidence is necessary to demonstrate "the relevant purchasing public's understanding of a contested term"). The Board, however, failed to cite any evidence indicating how a consumer would perceive a mark incorporating the exclamation point. In the absence of any such evidence in the record, the Board effectively imposed its own view about the commercial impression of the mark rather than that of the relevant consumer.

The express findings that the Board did make, moreover, strongly support the conclusion that a consumer would perceive the SNAP! design mark as depicting the snapping of a syringe plunger, as opposed to merely the snapping of "something," as the Board believed. As noted above, in determining whether a mark is merely descrip-

tive, the Board must consider the mark in relation to the goods for which it is registered. "The question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods and services are will understand the mark to convey information about them." *In re Tower Tech. Inc.*, 64 U.S.P.Q.2d 1314, 1316-17 (TTAB 2002). The Board's own findings indicate that the SNAP! design mark, viewed in the context of Inviro's products, does nothing other than depict the snapping of a syringe plunger: the prominent functional feature of Inviro's goods.

First, the Board found that Inviro's syringes are packaged with instructions on how to disable the needles. The third step in those instructions is "Snap off plunger!" Board op. at 22; *Inviro Med. Devices Ltd. v. DuoProSS Meditech Corp.*, Cancellation No. 92046702, Dkt. 44 at 59-61, Ex. C & D ("Sharp test."). Notably, the disabling instructions, an image of which the Board included in its opinion, prominently depict the mark incorporating the broken exclamation point, thereby placing the mark and the concept of snapping the syringe plunger in the same context:

**SNAP✓ Disabling Instructions**

After dose is delivered, WITH PLUNGER FULLY
DEPRESSED activate safety mechanism:

1. <u>ROTATE PLUNGER CLOCKWISE ONE HALF TURN</u>
   to release needle.



2. <u>PULL BACK ON PLUNGER UNTIL IT STOPS</u>
   <u>observing withdrawal of needle into the barrel.</u>



3. SNAP OFF PLUNGER**!**
   permanently disabling syringe.

**Syringe Disposal**

<u>Discard the used Inviro SNAP✓ Safety Syringe in</u>
<u>an appropriate safety disposal container.</u>

Part # PP-0014-00, Rev #B

✔ ™

**SNAP SIMPLY SAFER**

Board op. at 13; Sharp test. Ex. C.

In addition to the disabling instructions, the Board found that Inviro's website "prominently pictures a broken plunger and the word 'Snap.'" Board op. at 22. And, the Board noted that Inviro's founder, Dr. F. Ross Sharp, testified that "the disabling of the syringe involved a number of steps, one of them is breaking the plunger." Board op. at 23; Sharp test. at 61. The Board further noted that one dictionary definition of "snap" is "[t]o break suddenly: break in two." Board op. at 23 (citation and internal quotation marks omitted).

The Board's findings support no reasonable inference other than that a consumer viewing the SNAP! design mark in the context of Inviro's products would perceive it

as depicting the snapping of a syringe plunger. We cannot endorse the Board's opinion as supported by substantial evidence when the Board failed to make any findings supporting its conclusion that the SNAP! design mark was not merely descriptive, and when findings that it did make support the opposite conclusion. For these reasons, substantial evidence fails to support the Board's finding that DuoProSS failed to prove that the SNAP! design mark is merely descriptive.

## III

With respect to the SNAP SIMPLY SAFER mark, the Board erred in finding that DuoProSS failed to prove that mark is merely descriptive based on a combination of legal and factual errors. To determine whether a composite mark such as the SNAP SIMPLY SAFER mark is merely descriptive, the Board was required to examine the meaning of each component individually, and then determine whether the mark as a whole is merely descriptive. *See In re St. Paul Hydraulic Hoist Co.*, 177 F.2d 214, 215 (CCPA 1949). Like its conclusion on the SNAP! design mark, the Board's conclusion on the SNAP SIMPLY SAFER word mark is not supported by substantial evidence. The Board, moreover, legally erred when it concluded that puffery could render the mark more than descriptive.

## A

The Board failed to cite any evidence to support its conclusion that DuoProSS failed to prove that the SNAP SIMPLY SAFER mark is merely descriptive. The Board acknowledged that the word SNAP is descriptive when used with the recited goods. Board op. at 29. Then, the Board analyzed SIMPLY and SAFER, and concluded that the combination of those words results in "a distinctive impression separable from the word 'Snap . . . .'" *Id.* The

Board, however, failed to cite any evidence from the record to support that view. Rather, the Board observed that the combination of the terms SIMPLY and SAFER "creates a rhyming pattern that results in a distinctive impression separable from the word 'Snap,'" and "also forms a phrase that does not merely impart information about a significant characteristic of the goods." *Id.* The record, however, contains no evidence indicating that a consumer would focus on the alliteration formed by SNAP, SIMPLY, and SAFER, or that such alliteration would require a consumer to take the inferential step that the Board described. The Board's observation about the alliteration constitutes its own view about the mark, not a finding about the commercial impression that the mark conveys to a consumer based on evidence in the record.

Again, the Board's own findings indicate, if anything, that SIMPLY SAFER describes the most important advantage of Inviro's products: their safety. As the Board found, Dr. Sharp was concerned about the "terrible toll" of infectious diseases affecting healthcare workers from accidental needle sticks, prompting him to develop "a number of different types of *safety* syringes." Board op. at 22; Sharp test. at 12-13, 17 (emphasis added). The purpose of capturing the needle in the syringe barrel is to prevent a needle stick—in other words, to make the device safer.

While Dr. Sharp did assert that he wanted to convey to consumers how easy Inviro's products are to use, his testimony indicates that ease of use shaped only his choice of the word SNAP, not SIMPLY or SAFER. Dr. Sharp, for example, testified that the idea of using SNAP arose when a nurse told him, "'you know, this is so easy, I could teach my ten-year old son to use this syringe in ten seconds' and she sort of snapped her fingers like that." Sharp test. at 20. He did not, however, assert that the

idea of using SIMPLY SAFER arose from the same conversation or was otherwise shaped by his desire to convey the products' ease of use. *Id.* In any event, even if Dr. Sharp's decision to use the words SIMPLY and SAFER were motivated by a desire to convey the products' ease of use, the Board found no evidence during its double entendre analysis that consumers would recognize such a meaning.

The Board, in sum, failed to cite any evidence, and the record contains none, supporting its view that the alliteration in SNAP SIMPLY SAFER creates a commercial impression that is more than merely descriptive.

## B

The Board, moreover, erred as matter of law when it concluded that, because SIMPLY SAFER is a laudatory phrase or puffery, the phrase renders the mark more than descriptive. We review that legal conclusion de novo. *Pacer Tech.*, 338 F.3d at 1349.

The Board observed that "the term 'Simply' modifies 'Safer' such that the phrase SIMPLY SAFER may be perceived a general claim of superiority regarding the safety of petitioner's syringes and thus amounts to puffery." Board op. at 29-30. The Board appeared to believe that this puffery removes the mark from the realm of descriptiveness. For that proposition, the Board cited a treatise section addressing "puffing" under the unfair competition provisions of Section 43(a) of the Lanham Act. *Id.* at 30 n.4 (citing 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:38 (4th ed. 2009)). This case, however, concerns descriptiveness for purposes of trademark registerability, not unfair competition. The same treatise on which the Board relied and our precedent clearly indicate that puffing, if anything, is *more* likely to render a mark merely descriptive, not less

so. "Marks that are merely laudatory and descriptive of the alleged merit of a product are . . . regarded as being descriptive. . . . Self-laudatory or puffing marks are regarded as a condensed form of describing the character or quality of the goods." *In re Boston Beer Co.*, 198 F.3d 1370, 1373 (Fed. Cir. 1999) (citing 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:17 (4th ed. 1996)); *see also Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 1360 (Fed. Cir. 2001) (citing *Boston Beer* and *McCarthy* for the same proposition). Here, adding SIMPLY SAFER to SNAP does nothing more than laud the safety of Inviro's products, which, as discussed above, is a merely descriptive use.

## IV

Substantial evidence fails to support the Board's conclusion that DuoProSS failed to prove that the SNAP! design mark and SNAP SIMPLY SAFER mark are merely descriptive. Accordingly, we reverse the Board's decision and remand with instructions to enter judgment in favor of DuoProSS and to order cancellation of U.S. Registration Nos. 2,944,686 and 3,073,371.

**REVERSED AND REMANDED**