THIS OPINION IS A
PRECEDENT OF
THE TTAB

Hearing: September 20, 2018                    Mailed: April 25, 2019

**UNITED STATES PATENT AND TRADEMARK OFFICE**

———

**Trademark Trial and Appeal Board**

———

*Robinson*
*v.*
*Hot Grabba Leaf, LLC*

———

Cancellation No. 92060394

———

Louis R. Gigliotti of Louis R. Gigliotti PA,
    for Michael A. Robinson.

Daniel A. Tesler of Law Offices of Daniel A. Tesler, LLC,
    for Hot Grabba Leaf, LLC.

———

Before Ritchie, Hightower, and Larkin, Administrative Trademark Judges.

Opinion by Ritchie, Administrative Trademark Judge:

Hot Grabba Leaf, LLC ("Respondent") owns Registration No. 4263417 on the Principal Register for HOT GRABBA NATURAL TOBACCO LEAF, in standard character format, for "leaf tobacco," in International Class 34,[1] disclaiming the exclusive right to use "GRABBA NATURAL TOBACCO

---

[1] Registration No. 4263417 issued from Serial No. 85464616, filed November 4, 2011, and claiming March 1, 2011 as date of first use and first use in commerce.

LEAF" apart from the mark as shown, which registration issued on December 25, 2012.

Michael A. Robinson ("Petitioner") has petitioned to cancel Respondent's registration. In his amended petition for cancellation, Petitioner asserts that "since at least as early as November 1, 2006, Petitioner has been using GRABBA LEAF as a trademark in connection with tobacco and tobacco related products and since at least as early as July 11, 2009, Petitioner has been using GRABBA LEAF as a trademark in connection with tobacco and tobacco related products in commerce . . . ."[2] Petitioner further alleges that he is the owner of Registration No. 4487117[3] for GRABBA LEAF for cigar wraps and of Registration No. 4461093[4] for GRABBA LEAF and design, also for cigar wraps, both in International Class 34, and both disclaiming the term "LEAF" apart from the mark as shown.[5] The latter mark is depicted as follows:



The description of the mark states:

---

[2] 20 TTABVUE 3.

[3] Issued February 25, 2014 from Application No. 85772297, filed November 6, 2012 and claiming dates of first use on November 1, 2006, and first use in commerce on July 10, 2009.

[4] Issued January 7, 2014 from Application No. 85772332, filed November 6, 2012 and claiming dates of first use on November 1, 2006, and first use in commerce on July 10, 2009.

> The mark consists of an ovate shaped leaf with a tapered point having multiple veins occurring along a single main vein shaded with a copper brown hue towards the apex of the leaf and a russet brown at the lower end. The ovate leaf also consists of a black stem which radiates up through the leaf. The words "Grabba Leaf" are positioned on the center and right side of the leaf with the word "Grabba" above and slightly to the left of the word "Leaf". The "G" in "Grabba" is centered on the leaf. The wording has a dark green outline and a marigold yellow fill.

Petitioner alleges priority of use and likelihood of confusion with his marks under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).[6]

The answer to the amended petition denies the salient allegations, except as to the issuance by the Office of the parties' respective registrations.[7] The answer to the amended petition also contains several affirmative defenses, including that "[p]etitioner's claims are barred by the doctrine of laches, estoppel, and/or acquiescence," and that the registrations asserted by Petitioner "are invalid because the term 'Grabba Leaf' is merely descriptive and lacks secondary meaning."[8]

Respondent further filed a counterclaim to cancel both of Petitioner's pleaded registrations on the ground that they are merely descriptive without having acquired distinctiveness in that "[t]he term 'grabba' is commonly used

---

[5] 20 TTABVUE 3.

[6] 20 TTABVUE 4. The amended petition also includes claims of abandonment through non-use, fraud in the procurement of Respondent's registration, and that Respondent's mark is merely descriptive. 20 TTABVUE 5, 6, 11. However, as Petitioner did not pursue any of these claims with its brief, we deem them to be waived. *Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d 1419, 1422 (TTAB 2014). Specifically, as confirmed during the oral hearing, Petitioner's brief pursues only his claim of likelihood of confusion, and his defense to Respondent's counterclaim that Petitioner's marks are not merely descriptive.

[7] 21 TTABVUE 3.

in the tobacco industry as a synonym for fronto leaf tobacco and fanta leaf tobacco" and that these terms are "used interchangeably as the common name of and/or to describe products containing the same."[9] Respondent further alleges that "[w]hen the terms 'grabba' and 'leaf' are combined into 'grabba leaf,' the term merely describes the main ingredient used in Petitioner's products, namely a grabba leaf."[10] Respondent also asserts in its counterclaim that Petitioner's pleaded marks are generic.[11] Petitioner did not file an answer to Respondent's counterclaim filed with its answer to the amended complaint. Instead, Petitioner filed a motion for summary judgment,[12] which was denied.[13] Nevertheless, Petitioner did answer the original counterclaim filed with Respondent's answer to the petition, wherein Petitioner denied the salient allegations of the counterclaim; and the counterclaim filed with the answer to the amended complaint was unchanged.[14]

The case is fully briefed. On request from Petitioner, an oral hearing was held and presided over by this panel.

## I.     The Record and Evidentiary Issues

The record consists of the pleadings and the files of the involved registrations, including Respondent's registration and both registrations

---

[8] 21 TTABVUE 18-19.

[9] 21 TTABVUE 19.

[10] 21 TTABVUE 20.

[11] 21 TTABVUE 21.

[12] 23 TTABVUE.

[13] 30 TTABVUE.

asserted by Petitioner, which are subject to the counterclaim for cancellation. Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1).

Additionally, the Board discussed the evidence of record, and ruled on Respondent's motion to strike, in an order dated April 14, 2017.[15] With the qualifications discussed herein, the following are of record:

By Petitioner:

1. Petitioner's First Notice of Reliance, stated to be on electronic copies of his registrations. 36 TTABVUE.[16]

2. Petitioner's Second Notice of Reliance, stated to be on electronic copies of his registrations but attaching only his declaration, dated May 31, 2013, from the file record of each of his pleaded registrations, titled "Declaration of Applicant in Support of Registration of Trademark Application." 37 TTABVUE.[17]

3. Petitioner's Third Notice of Reliance, on selected pages from the August 26, 2015 discovery deposition of Bryan Wilson, Respondent's owner and agent. 38 TTABVUE.

4. Petitioner's Fifth Notice of Reliance, on his declaration, dated June 24, 2016, with exhibits thereto. 40 TTABVUE. [18]

---

[14] 7 TTABVUE.

[15] 49 TTABVUE. The order granted the motion to strike Petitioner's Fourth Notice of Reliance, Petitioner's Seventh Notice of Reliance, and page 2 of Petitioner's Sixth Notice of Reliance.

[16] This was unnecessary as they are automatically of record under Trademark Rule 2.122(b), 37 C.F.R. § 2.122, because of Respondent's counterclaim.

[17] See discussion *infra*.

[18] See discussion *infra*.

5. Petitioner's Sixth Notice of Reliance (except p. 2, which was stricken), on web pages regarding the registration of domain names. 41 TTABVUE.

6. Petitioner's Eighth Notice of Reliance, on Respondent's written responses to Petitioner's first set of discovery requests. 43 TTABVUE.

7. Testimonial deposition (for cross-examination) of Bryan Wilson, dated August 25, 2017. 65 TTABVUE.

By Respondent:

1. Respondent's First Notice of Reliance, including Petitioner's responses to requests for admission. 52 TTABVUE.

2. Respondent's Second Notice of Reliance, including Petitioner's responses to interrogatories. 53 TTABVUE.

3. Respondent's Third Notice of Reliance, including portions of the discovery deposition of Bryan Wilson, to provide context for portions submitted by Petitioner. 54 TTABVUE.

4. Respondent's Fourth Notice of Reliance, including webpages with descriptive references to the term "grabba." 55 TTABVUE.

5. Respondent's Fifth Notice of Reliance, including web references about tobacco and its uses. 56 TTABVUE.

6. Respondent's Sixth Notice of Reliance, including web references to a song originating from a Jamaican artist. 57 TTABVUE.

7. Respondent's Seventh Notice of Reliance, including web references from Jamaican news media. 58 TTABVUE.

8. Respondent's Eighth Notice of Reliance, including USPTO records showing the cancelled status of Petitioner's prior, nonpleaded registration, and listing it as cancelled, and web references to the term "grabba." 59 TTABVUE.

9. Testimonial declaration of Bryan Wilson, dated June 29, 2017, with exhibits. 60 TTABVUE.

Regarding Petitioner's May 31, 2013 declaration (the "File Declaration") submitted with his Second Notice of Reliance, the File Declaration was originally included in the files of both of the applications that matured into Petitioner's two pleaded registrations. The parties dispute whether the File Declaration constitutes testimony for purposes of this proceeding. Respondent argues that it is properly construed as part of the application files, but that it is not admissible as "testimony" in this proceeding. In support of this argument, Respondent cites amended Trademark Rule 2.122(b)(2), 37 C.F.R. § 2.122(b)(2), which as revised in 2017 provides in relevant part that "[s]tatements made in an affidavit or declaration in the file of an application for registration, or in the file of a registration, are not testimony on behalf of the applicant or registrant."[19]

Petitioner counters that the File Declaration is indeed properly construed as "testimony" in this proceeding since he submitted it during his trial

---

[19] 70 TTABVUE 14-15.

period,[20] pursuant to Trademark Rule 2.123(a)(1), 37 C.F.R. § 2.123(a)(1), which as revised in 2017 provides in relevant part:

> The testimony of witnesses in inter partes cases may be submitted in the form of an affidavit or a declaration pursuant to § 2.20 and in conformance with the Federal Rules of Evidence, filed during the proffering party's testimony period, subject to the right of any adverse party to elect to take and bear the expense of oral cross-examination of that witness . . . .

We note, however, that these two rules are not the only authority relevant to the question of whether we can accept a file declaration as testimony in a proceeding. In particular, Trademark Rule 2.121(a)(1), 37 C.F.R. § 2.121(a), which applies to all evidence submitted in inter partes proceedings, provides in relevant part as follows:

> The Trademark Trial and Appeal Board will issue a trial order setting a deadline for each party's required pretrial disclosures and assigning to each party its time for taking testimony and presenting evidence ("testimony period"). No testimony shall be taken or evidence presented except during the times assigned, unless by stipulation of the parties approved by the Board, or upon motion granted by the Board, or by order of the Board.

Under the revised rules, Trademark Rule 2.123(a)(1) allows parties to submit "testimony" by "an affidavit or a declaration." Absent a stipulation or Board order, a testimony affidavit or declaration must be taken—that is, executed—during the assigned testimony period, as required by Rule 2.121(a).[21] Thus the File Declaration that Petitioner seeks to introduce as

---

[20] 71 TTABVUE 2-3.

[21] This is consistent with Trademark Rule 2.123(a)(2), which discusses "[t]estimony taken in a foreign country," and provides, as amended, that such testimony "shall be taken" in one of three ways, including "by affidavit or declaration." Similar language is included in Trademark Trial and Appeal Board Manual of Procedure ("TBMP") §

testimony under his Second Notice of Reliance is not appropriately considered as such since it was dated over three years prior to Petitioner's testimony period.

The requirement to take testimony during the testimony period is well-established. *See e.g., M-Tek Inc. v. CVP Sys. Inc.*, 17 USPQ2d 1070, 1072 (TTAB 1990). In that case, the Board considered a motion to strike witness testimony taken by the petitioner. The Board noted that it had reopened petitioner's testimony period for a limited purpose of noticing certain specific depositions. Petitioner, however, also took the deposition of a witness "whose deposition had not previously been noticed." Although the respondent did not object until after the deposition (via a motion to strike), the Board found that the motion to strike "is based not on insufficient notice but rather on the ground that the deposition in question was taken untimely." In this regard, the Board cited Trademark Rule 2.121(a), finding the deposition to be outside petitioner's assigned testimony period, and not by Board order or by stipulation of the parties. Thus, the deposition was stricken and "given no consideration." *See also Carefirst of Md. Inc. v. FirstHealth of the Carolinas Inc.*, 77 USPQ2d 1492, 1497 (TTAB 2005) (denying applicant leave to take testimony *after* the close of the testimony period.). *But see Of Counsel Inc. v.*

---

703.01(a) (2018), which states that "[t]estimony is taken out of the presence of the Board, by affidavit or declaration, or on oral examination or written questions, and the affidavits, declarations and written deposition transcripts, together with any exhibits thereto, are then submitted to the Board," and Section 703.01(b) explains that "[o]rdinarily, the testimony of a witness may be taken by affidavit, declaration or on oral examination . . . or by deposition on written questions . . . ."

*Strictly of Counsel Chartered*, 21 USPQ2d 1555, 1556 n.2 (TTAB 1991) (overruling objection to testimony taken two days *before* scheduled trial, finding that the error was made "in good faith" and objection to timeliness not seasonably raised is waived).

Petitioner also submitted the File Declaration with the reply in support of his motion for summary judgment. The declaration was included, however, in an exhibit as part of the registration file rather than being set forth as a discrete declaration in support of the motion for summary judgment. Furthermore, as the Board noted in denying Petitioner's motion for summary judgment:

> [T]he evidence submitted in connection with a motion for summary judgment or opposition thereto is of record only for consideration of that motion. Any such evidence to be considered at final hearing must be properly introduced in evidence during the appropriate trial period.[22]

The order cites *Levi Strauss & Co. v. R. Joseph Sportswear Inc.*, 28 USPQ2d 1464, 1465 n.2 (TTAB 1993) and *Pet Inc. v. Bassetti*, 219 USPQ 911, 913 n.4. (TTAB 1983). The findings in those cases are consistent with our finding here under the amended rules. Notably, in order to properly make an affidavit or declaration of record as trial testimony, absent a stipulation or Board order, the affidavit or declaration must be executed during the

---

[22] 30 TTABVUE 7.

assigned testimony period, unless submitted as an exhibit to other testimony and affirmed therein.[23]

In accordance with Trademark Rule 2.121(a)(1), therefore, we do not consider Petitioner's File Declaration as testimony in this proceeding. It is, nevertheless, in accordance with Trademark Rule 2.122(b), part of the record of the proceeding, subject to the Federal Rules of Evidence. The pertinence of the File Declaration as forming part of the record is discussed further herein, in our analysis of "Mere Descriptiveness."

## II. Standing

Standing is a threshold issue that must be proven in every *inter partes* case. *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014). *See also Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982) ("The facts regarding standing . . . must be affirmatively proved. Accordingly, [plaintiff] is not entitled to standing solely because of the allegations in its [pleading]."). Our primary reviewing court, the U.S. Court of Appeals for the Federal

---

[23] We note that Petitioner's June 24, 2016 declaration, submitted with exhibits under Petitioner's Fifth Notice of Reliance, was also executed and submitted with Petitioner's reply to his motion for summary judgment. 27 TTABVUE 7-8. Thus, this declaration was executed several months before Petitioner's assigned trial period, and was not submitted via other testimony and affirmed therein in the manner discussed in *Levi Strauss*. Respondent objected to the submission of Petitioner's Fifth Notice of Reliance by motion to strike, and continued that objection in its brief. We find that the June 24, 2016 declaration was not stipulated into the record, and do not consider this declaration as trial testimony either. We further note, nevertheless, that our conclusion in this case would not be different if we had considered either the File Declaration or the June 24, 2016 declaration. Parties may submit such declarations under a timely taken affidavit or declaration attesting to the continued accuracy of the information residing therein.

Circuit, has enunciated a liberal threshold for determining standing, namely that a plaintiff must demonstrate that it possesses a "real interest" in a proceeding beyond that of a mere intermeddler, and a "reasonable basis for his belief of damage." *See Empresa Cubana Del Tabaco*, 111 USPQ2d at 1062 (citing *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025-26 (Fed. Cir. 1999)). A "real interest" is a "direct and personal stake" in the outcome. *Ritchie v. Simpson*, 50 USPQ2d at 1026.

As a result of Petitioner's submission of status and title copies of his two pleaded registrations, Petitioner has established his standing. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000). Respondent has standing in the counterclaim by virtue of being the defendant in this cancellation proceeding. *See* Trademark Act Section 14, 15 U.S.C. § 1064; *see also Cunningham v. Laser Golf Corp.*, 55 USPQ2d at 1844; *Del. Quarries, Inc. v. PlayCore IP Sub, Inc.*, 108 USPQ2d 1331 (TTAB 2013).

## III.   Mere Descriptiveness

We thus turn to Respondent's counterclaim that the marks in both of Petitioner's asserted registrations are merely descriptive without having acquired distinctiveness, since the claim is potentially dispositive of the case.[24] If Respondent prevails in this claim, then Petitioner's asserted registrations will be cancelled and are unenforceable against Respondent.

---

[24] We note that Petitioner's registrations are not registered with a Section 2(f) claim of acquired distinctiveness and Petitioner has not pleaded or argued that his marks

The party challenging a registration's validity bears the burden of proving that the mark is merely descriptive by a preponderance of the evidence. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1756 (Fed. Cir. 2012). A term is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. *See In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (citing *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987)); *see also In re TriVita, Inc.*, 783 F.3d 872, 114 USPQ2d 1574, 1575 (Fed. Cir. 2015); *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). Whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services, and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use. *In re Mecca Grade Growers, LLC*, 125 USPQ2d 1950, 1952 (TTAB 2018) (citing *In re Chamber of Commerce*, 102 USPQ2d at 1219). That a term may have other meanings in different contexts is not controlling. *In re Canine*

---

have acquired distinctiveness. Rather, Petitioner only argues that his marks are inherently distinctive. In view thereof, the issue of acquired distinctiveness is not before us as to the counterclaims and there is no evidence or argument to support a finding of acquired distinctiveness to establish any possible prior proprietary rights in the context of Petitioner's claim of likelihood of confusion if these designations are merely descriptive.

*Caviar Pet Foods, Inc.*, 126 USPQ2d 1590, 1598 (TTAB 2018). Moreover, "[t]he question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them." *DuoProSS*, 103 USPQ2d at 1757 (quoting *In re Tower Tech Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002)); *see also In re Patent & Trademark Servs. Inc.*, 49 USPQ2d 1537 (TTAB 1998); *In re Home Builders Ass'n of Greenville*, 18 USPQ2d 1313 (TTAB 1990); *In re Am. Greetings Corp.*, 226 USPQ 365 (TTAB 1985). On the other hand, if a mark requires imagination, thought and perception to ascertain the nature of the goods or services, then the mark is suggestive. *DuoProSS*, 103 USPQ2d at 1755 (citing *In re Abcor Dev. Corp.*, 200 USPQ at 218). The relevant public in this case consists of consumers of tobacco or tobacco products, including the "cigar wraps" identified by Petitioner in both registrations at issue.

Pursuant to a requirement by the Trademark Examining Attorney during the application process, Petitioner has disclaimed the exclusive right to use the term "LEAF" apart from the mark as shown for both registrations. Under such circumstances, the disclaimer may be considered an admission by Petitioner that the term "LEAF" is merely descriptive of its identified "cigar wraps." *See Bass Pro Trademarks LLC v. Sportsman's Warehouse Inc.*, 89 USPQ2d 1844, 1851 (TTAB 2008). In this regard, the Federal Circuit has stated that "[t]o determine whether a composite mark [such as the one at

14

issue] is merely descriptive, the Board was required to examine the meaning of each component individually, and then determine whether the mark as a whole is merely descriptive." *DuoProSS*, 103 USPQ2d at 1758 (citing *In re St. Paul Hydraulic Hoist Co.*, 177 F.2d 214, 83 USPQ 315 (CCPA 1949)); *see also In re Steelbuilding.com*, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1423 (Fed. Cir. 2005).

Respondent argues that Petitioner's marks GRABBA LEAF and



are merely descriptive because they describe a feature or characteristic of Petitioner's goods, namely that (1) grabba is understood by the relevant public as "a form of tobacco;"[25] (2) grabba leaf is commonly understood as a product that consists of a "grabba-type tobacco leaf;"[26] and

(3) the mark with the design element  has the same merely descriptive meaning.

Respondent argues that the record supports a finding that its burden to rebut the presumption of validity has been met. In particular, Respondent points to third-party descriptive references to the terms "grabba" and "grabba leaf" in news articles; song lyrics that refer to "grabba"; a definition from the

---

[25] 70 TTABVUE 25.
[26] 70 TTABVUE 46.

Urban Dictionary; and statements by Petitioner himself, regarding the wide-spread use of the terms.

Various third-party websites submitted by Defendant show the terms "grabba" and "grabba leaf" used in connection with tobacco products, including cigar wraps. Examples in the record include the following:[27]

> Fronto leaf is also popularly called 'grabba leaf', which is typically known for it's [sic] strong/bold smoke.
> wholeleaf.com; 55 TTABVUE 5.

> Okay, but how do I USE a Fronto Leaf? . .. For those using the leaf as Grabba, let the leaf dry out completely in the open are [sic] and crush as needed.
> LeafOnly.com; 55 TTABVUE 11.

> Looking for Fronto Leaf? You found your way here because you take your smoke seriously. You enjoy true quality whether you are 'rolling your own' or smoking your fronto leaf as 'grabba', or rolling a cigar.
> FrontoLeaf.com; 55 TTABVUE 21.

> Fronto tobacco leaf, sometimes known as grabba leaf, or fanta leaf, is a tobacco wrapper leaf sold by the individual leaf or by the pound to our customers in Houston.
> BuyLeaves.com; 55 TTABVUE 29.

> If you are of Caribbean decent [sic], then you are no stranger to grabba.. . . The gold packages contain lighter grabba leaves, which will result in a very faint taste. . . . If you're looking to try a new way of smoking, roll up your cannabis in an all natural

---

[27] Respondent also included news articles from media that are based in Jamaica. 58 TTABVUE 5-13. While these sources show that "grabba" and "grabba leaf" have an understood meaning in Jamaica, we do not see in this record a basis to infer that relevant U.S. consumers would have considered these foreign sources to inform their own understanding of the meaning of "grabba" and "grabba leaf." We therefore have not considered them in assessing the terms' meaning among relevant U.S. consumers. *See Canine Caviar*, 126 USPQ2d at 1596 ("While evidence of foreign use may in some cases be probative, in this case it does not serve to tell us the norms specific to pet owners in the United States, who are the relevant consumers.") (citing *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828, 1835 (Fed. Cir. 2007)).

fronto leaf from Gold Leaf Inc. The lightest, smoothest and first grabba to be introduced to cannabis industry.
Thehighercontent.com; 55 TTABVUE 33-34.

Grabba Whole Tobacco Fronto Leaf: What is a Fronto Leaf?: "Fronto," "Grabba," and "Fanta" are all just alternative names for 100% Whole Leaf Tobacco.
Stogywraps.com; 55 TTABVUE 36.

We find these third-party references to be probative evidence that the relevant public perceives the terms "grabba" and "grabba leaf" to, at a minimum, immediately convey information about an ingredient or characteristic of tobacco, or tobacco products, including cigar wraps.

Respondent also submitted into the record the lyrics from a 2003 song "Pon de River Pon de Bank," which he states was widely distributed, including in the United States.[28] The relevant lyrics are:

A'right, labba labba
Seh him a get ole, an can badda we di music hit him,
hi drop weed an grabba
60 TTABVUE 29.

We find the use of the term "grabba" in the song to be too vague to be probative concerning its meaning to the relevant public.

Respondent further submitted evidence of a definition from the Urban Dictionary for "grabba" as:

A Jamaican term used to describe something mixed with marijuana when smoked, so as to keep the sent [sic] down and to get rid of the bad aftertaste.

The entry is dated March 5, 2008.[29] A definition from the Urban Dictionary may be probative where appropriately considered in context. *See In re*

17

*Brunetti*, 877 F.3d 1330, 125 USPQ2d 1072, 1076 (Fed. Cir. 2017), *cert. granted sub nom. Iancu v. Brunetti*, 202 L. Ed. 2d 510 (U.S. Jan. 4, 2019); *In re Manwin/RK Collateral Trust*, 111 USPQ2d 1311, 1313 n.17 (TTAB 2014); *see also Bikram's Yoga Coll. of India, LP v. Evolation Yoga, LLC*, 803 F.3d 1032, 116 USPQ2d 1357, 1365 n.13 (9th Cir. 2015) (citing Urban Dictionary). Similarly, in this case, we find that the Urban Dictionary definition corroborates the other evidence of record which shows the terms "grabba" and "grabba leaf" as conveying information about an ingredient or characteristic of tobacco, or tobacco products, including cigar wraps.

Finally, we look at Petitioner's File Declaration, submitted on May 31, 2013, where Petitioner states:

> Paragraph 6: Since my use of the GRABBA LEAF trademarks, the term GRABBA has entered pop culture vernacular, through amongst other things, the use in songs in the Caribbean, namely Vybz Kartel featuring Popcaan – Hot Grabba, released June 2010.

> Paragraph 7: The entry of the term GRABBA into pop culture vernacular postdates my use of the GRABBA LEAF trademarks.

As discussed above, Petitioner's File Declaration is not testimony in this proceeding. It is, nevertheless, part of the record of the proceeding, in accordance with Trademark Rule 2.122(b), because the registration is the subject of Respondent's counterclaim. In this regard, we find that this statement made by Petitioner in this File Declaration bears on the probative

---

[28] 60 TTABVUE 8.
[29] 60 TTABVUE 8, 31.

value of his defense to the counterclaim of mere descriptiveness. In short, although Petitioner denies that his marks are merely descriptive, his statement in his File Declaration is inconsistent with that position and supports a contrary conclusion. *See also Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015) (recognizing that comments made during prosecution "have significance as 'facts illuminative of shade and tone in the total picture confronting the decision maker'") (quoting *Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 198 USPQ 151, 153 (CCPA 1978) and citing, *inter alia*, *Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1161 (Fed. Cir. 2014)).

In his brief, Petitioner further admits that currently, the relevant public views the term "grabba" as merely descriptive, arguing, "[o]nly after Robinson, have second comers and junior users adopted the GRABBA term as part of a trademark, or worse, *to describe* a tobacco cigar wrap product."[30]

Petitioner repeatedly argues that to the extent "GRABBA LEAF" is merely descriptive, "[t]he entry of the term GRABBA into pop culture vernacular postdates my use of the GRABBA LEAF trademarks."[31] Whether Petitioner was the first user of the term is irrelevant since we evaluate the question of whether a term is merely descriptive as of the time of trial. *See Grote Indus., Inc. v. Truck-Lite Co.*, 126 USPQ2d 1197, 1211 (TTAB 2018),

---

[30] 69 TTABVUE 9 (emphasis added).
[31] 37 TTABVUE 5 (File Declaration at paragraph 7).

(citing *Neapco Inc. v. Dana Corp.,* 12 USPQ2d 1746, 1747 (TTAB 1989)), *civil action filed,* No. 1:18-cv-00599-LJV-MJR (W.D.N.Y. May 24, 2018); *see also Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.,* 107 USPQ2d 1750, 1764 (TTAB 2013); *Kasco Corp. v. Southern Saw Serv. Inc.,* 27 USPQ2d 1501, 1506 n.7 (TTAB 1993) (finding that petitioner could prevail if record revealed respondent's registered mark lacked acquired distinctiveness either at time of registration "or as of the present time"). We view the combination of Petitioner's statements in his File Declaration, taken together with the statements in his brief, as admissions that the term "grabba" is currently viewed by the relevant public as, at a minimum, immediately conveying information about an ingredient or characteristic of tobacco, or tobacco products, including cigar wraps.

Overall, considering all of the evidence of record, we find that the term "GRABBA LEAF," when viewed in relation to Petitioner's "cigar wraps," immediately conveys information about them, namely that they may be used as a leaf to wrap grabba tobacco, or that grabba leaf tobacco is an ingredient in the cigar wraps.[32] Thus, we find that Respondent has shown by a preponderance of the evidence that Petitioner's standard character mark GRABBA LEAF, considered as a whole, is merely descriptive of cigar wraps.

---

[32] We note, in this regard, that Petitioner, himself, argues in his reply brief that "the Board must find that raw tobacco leaf and cigar wraps are nearly identical, and to even argue otherwise is not only unsubstantiated, but is nearly disingenuous." 71 TTABVUE 3.

20

Similarly, we find that the design mark , which contains the merely descriptive term GRABBA LEAF along with a design of what appears to be a tobacco leaf, when considered as a whole, gives the same commercial impression and is also merely descriptive of Petitioner's cigar wraps. *See DuoProSS,* 103 USPQ2d at 1756 (noting that "[w]hen determining whether a mark is merely descriptive, the Board must consider the commercial impression of a mark as a whole" and should have considered the design element as well as the literal elements, finding the mark thus to be merely descriptive); *Herbko Int'l Inc. v. Kappa Books Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002) (noting that crossword puzzle design reinforces connotation created by wording CROSSWORD COMPANION); *In re Singer Mfg. Co.*, 255 F.2d 939, 118 USPQ 310, 311-12 (CCPA 1958) ("It is, of course, true that a design consisting merely or essentially of a pictorial representation of the goods on which it is used is descriptive, and is not a valid trademark.") (citation omitted).

Petitioner argues in his brief that his marks are at worst suggestive, stating that "[i]incongruity is a strong indication that a mark is suggestive rather than merely descriptive."[33] And Petitioner stated in his response to Respondent's First Set of Interrogatories, No. 13 that "GRABBA LEAF achieves a parody-like double entendre using GRABBA as both a verb and as

---

[33] 69 TTABVUE 11.

a noun at the same time."[34] However, Petitioner does not mention in his briefing the term "double entendre." Nonetheless we note that, as our precedent dictates, the meaning of the mark, in creating a double entendre, must be self-evident from the face of the mark. *See In re Calphalon Corp.*, 122 USPQ2d 1153 (TTAB 2017). As the Board stated therein:

> The multiple interpretations that mark an expression a 'double entendre' must be associations that the public would make fairly readily, and *must be readily apparent from the mark itself."*
> *Id.* at 1163 (citations omitted).

Petitioner cites no evidence that the relevant public would find that the double entendre alleged by Petitioner in his interrogatory response is "readily apparent" from the mark itself. Here, as in *Calphalon*, we find that Petitioner's marks are merely descriptive, and that there is no double entendre to render the marks not so.[35]

Respondent's counterclaim for cancellation is granted as to both of Petitioner's pleaded registrations on the ground that they are merely descriptive.[36]

Moreover, we find that since Petitioner has not pleaded or argued that his marks have acquired distinctiveness, he cannot establish the existence of prior rights at common law for purposes of his claim of likelihood of

---

[34] 53 TTABVUE 7.

[35] As discussed, *infra*, Petitioner does not argue that if we find his marks to be merely descriptive, that they have acquired distinctiveness, and we therefore do not consider that possibility.

[36] Since we have cancelled Petitioner's registrations on the ground that they are merely descriptive, we need not also consider Respondent's alternative ground that

confusion, and thus he cannot prevail on his sole ground for cancellation of Respondent's mark under Section 2(d) of the Trademark Act. *Giersch v. Scripps Networks Inc.*, 90 USPQ2d 1020, 1023 (TTAB 2009).

**Decision:** Petitioner's petition for cancellation is denied.

Respondent's petition for cancellation on its counterclaim is granted as to both Registration Nos. 4487117 and 4461093, on the ground that the marks therein are merely descriptive. The registrations will be cancelled in due course.

---

they are generic. *Multisorb Tech., Inc. v. Pactiv Corp.*, 109 USPQ2d 1170, 1171 (TTAB 2013).